## HAMMETT v. FARMER.

1. In action for the recovery of a tract of land, where the only matter in dispute is the location of land sold by the sheriff, evidence of payments made to the parties to the execution and of the other disposition of the proceeds of sale, is immaterial and therefore harmless.

2. Entries by the sheriff made upon separate slips of paper and attached to an execution are parts of the record, as much so as if endorsed on the execution; and therefore are admissible in evidence with the execution.

3. Defendants claimed title under an execution which had been amended, *Held*, that an affidavit used in opposition to such amendment was not a part of the record and was not admissible as evidence in this action against the defendants.

4. The Circuit Judge, in his statements of the testimony to the jury in this case, did not charge upon the facts.

5. Alleged errors in the charge upon immaterial matters raise only abstract questions, which need not be considered.

6. When the sheriff levies upon land of the defendant in execution, whose land is composed of several contiguous tracts, and the sheriff's deed will apply as well to one of these original tracts as to the whole consolidated tract, the boundaries of the levy and sale are a question of location for the jury. What the sheriff ought to have done is immaterial. The law does not raise a presumption that the tract most nearly corresponding to the number of acres sold, was the tract levied upon.

7. A purchaser at sheriff's sale under execution against several parties, brought action for recovery against T., one of them, the others having abandoned the possession to the purchaser. In action by some of the parties so abandoning, to recover this land, the Circuit Judge did not err in admitting the record of the action against T. as evidence to show the location of the land sold by the sheriff. MR. JUSTICE McIVER *dissenting.*

Before KERSHAW, J., Spartanburg, March, 1886.

The opinion sufficiently states the case.

*Messrs. J. S. R. Thomson* and *H. E. Ravenel,* for appellants.

*Messrs. Duncan & Sanders,* contra.

April 21, 1887. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The plaintiffs, appellants, brought the action below to recover a tract of land in the possession of the defendants, and for damages for its detention. As to the greater portion of the land both parties run back to one James Birchfield, as a common source. As to the other portion the defendants claim under a title independent of Birchfield, and as the plaintiffs did not produce a grant either actual or presumptive, it was admitted that they could not recover said latter portion. The real contest, therefore, was over so much as both parties claimed, running back to Birchfield as a common source.

The plaintiffs produced deeds showing that Birchfield owned the land up to his death, and they claim as heirs of the said Birchfield. The defendants claim under a sheriff's deed executed to one Leitner, who bought the land at sheriff's sale made under

a judgment obtained against certain heirs of the said Birchfield after his death, and from Leitner regularly down to the father of the defendant, Mrs. Farmer, who devised the same to her. Under these circumstances, the main question in the case was one of location. The plaintiffs denied that the defendants' titles covered all the Birchfield land of which they were in possession. The surveyor located the sheriff's deed to Leitner so as to cover the land in dispute, containing 500 acres, more or less. He said, however, that the wording of the sheriff's deed was very indefinite, and that it might have been located so as to cover what was known as the Pruit land alone of 445 acres, which would have been nearer the quantity called for in the sheriff's deed, 500, than the location which he made, containing 590 acres, and that he could have located that deed either way. The plaintiffs contended that the Birchfield lands had been made up of various tracts, and that when the sheriff levied, he did not levy upon the whole land, but only upon certain tracts thereof, and that the land in dispute was not embraced in the levy, and that the location should not include said land.

The verdict was for the defendants, and now the plaintiffs are before us on appeal with twenty-three exceptions. These, however, have been condensed in the argument of appellant into twelve propositions, the consideration of which disposes of all the material points involved.

I. "It was error (as appellant claims) to allow in testimony the separate receipts attached to the sheriff's deed, or the statement on sheriff's book as to what was intended to be done with the fund from the sale." It seems that, in connection with the sale to Leitner, the sheriff had attached to the execution under which the sale was made, or at least there was found attached to this *fi. fa.*, an old paper signed by the Birchfield heirs, directing the sheriff to pay the proceeds of sale over to one Sampson Clayton. This was admitted in evidence, the plaintiffs objecting. Also a receipt for the balance, not signed, showing the amount of Leitner's bid, the costs, and the balance remaining, &c.; also an entry in the execution book showing the disposition of the proceeds of the sale. And the exception above assigns the admission of these papers, &c., as error.

We do not clearly see what bearing this testimony had upon the case either for or against the plaintiff. There was no doubt that some of the Birchfield land had been sold by the sheriff, and that Leitner was the purchaser. It was also certain that the defendants had become possessed of all that Leitner purchased, and we cannot see how the disposition of the proceeds of that sale touched the question of the location of the sheriff's deed to Leitner. It appears to us to have been immaterial and therefore harmless; but if it were otherwise, why should these matters have been excluded? Had the entries all been indorsed on the *fi. fa.* itself, would they not have constituted a part of the record, and have been admitted with it? If so, were they not substantially indorsed thereon, by being attached thereto? The sheriff's execution book was certainly competent.

II. "It was error not to allow in testimony the affidavit of Malinda Birchfield." The only reference that we find to this matter in the "Case" is the following: "Plaintiffs proposed to introduce affidavit of Malinda Birchfield along with the judgment record, said affidavit having been used in opposition to the amendment of execution as ordered by Judge Hudson. Motion overruled and exception taken." We are again at a loss to know from this meagre statement what application this had to the case. It seems, however, that a motion had been made before Judge Hudson at some time to amend the execution under which Leitner purchased the land, and this motion was resisted upon an affidavit of some kind made by Malinda Birchfield. The execution was, however, amended, and the old record in that case, including the amended execution, was introduced here as evidence. The plaintiffs claimed that this affidavit of Malinda should come in as a part of that record. It appears to us that this affidavit was nothing more than evidence relied on by plaintiffs in resisting the proposed amendment, and constituted no essential part of the record, and was therefore properly excluded.

III. "It was charging in respect to the facts to charge that the plaintiffs had no right to recover that tract of land to the left of Easley's Creek, and that Tabitha Whitehead was in possession of and claiming the land in dispute." The folio in which this charge appears, if any, is not given, and we may have overlooked

it; but we do not see, when the charge is read as a whole, that he anywhere invaded the province of the jury as to the facts. And this applies also to the next exception, to what the judge said in reference to the sheriff levying on different tracts, as well as to his remark that "there appeared to have been a' judgment regularly entered up against the heirs of James Birchfield," which is the foundation of the 5th proposition of appellants.

VI. The permissive occupation of land by the plaintiffs (defendants, we suppose, was meant) cannot be tacked with their occupation under the will of Cannon. And VII. "A devisee cannot tack her possession with that of the testator." These two exceptions or propositions of appellants present very much the same idea, and have been considered together. Whatever may be the correct doctrine on this question of tacking possession by a devisee with that of the testator, and whether his honor erred therein here, is wholly immaterial, because his honor distinctly charged the jury that in this case, inasmuch as the limit when defendants went into possession was 20 years, instead of 10, as it had been before, and since, and as it was clear that defendants and their testator had not been in possession for that period, they could found no claim on their possession. The questions, then, raised in these exceptions are abstract questions, and need not be determined here.

VIII. "Unless the defendants claimed under a grant or a possession from which there is a presumption of grant, or some part of the land for the statutory period with color of title to the whole, then the true owner cannot be barred except by an actual *pedis possessio.*" As has already been stated, the parties claimed from a common source, so far as the land really in dispute was concerned, and the vital question was whether the defendants' title, to wit, the sheriff's deed, covered that land. The defendants did not rest their defence upon possession either actual or constructive, but upon paper title, and it appears to us that the proposition submitted above was another abstract proposition in no way involved in the case.

IX. "The sheriff ought not to levy *en masse* on different tracts of land." It seems that the Birchfield land was made up of several original tracts, bought at different times by Birchfield,

and held by him as one tract, all adjoining.  One question in the case was whether the sheriff had levied upon the whole, and sold the whole to Leitner, or whether he had levied only on a portion, as represented by some of the original tracts.  The deed which he executed to Leitner in its descriptions and boundaries could be located to suit either case.  If located to cover the whole, then the land in dispute went to the defendant; if only a part, then the plaintiffs were entitled to recover.  Thus this question of the sheriff's levy became a very material question.

Upon this subject his honor charged as follows : "In regard to that claim, that the sheriff's deed ought to be confined to a single tract of land, I would say this : that a sheriff in levying land can know very little about it, when it is all in the possession of one man, cultivated together and used together as one plantation. He could not know, it is impossible that he should know, of how many different tracts that plantation originally consisted ; and it would be unreasonable to say that he was obliged to find out whether it consisted of one or two or three tracts.  If there were several distinct and separate tracts, a tract over yonder, and another disconnected with it, then to sell two tracts that were not contiguous, lying together, and bounded together, would be improper, and a sale like that would not likely stand.  But when a man is in possession of land and has gradually added to it various tracts of land, and the sheriff levies on the land and sells it in gross, it is a proper sale, and may be extended to all the boundaries described in the sheriff's deed.  It is a question of fact as to the location of that deed, which you are to determine according to the best light before you."

This charge when read as a whole as above quoted is certainly free from error, and as this is the matter before us, it is needless to discuss what the sheriff ought to have done or what he did do. This latter was a question of fact, which the judge distinctly left to the jury.

X. "Where a levy and sale will apply equally as well to two tracts of land so far as regards boundaries, and there is absence of anything to rebut the presumption, then the presumption is obliged to be that it applies to that tract which most nearly corresponds with the number of acres mentioned in the levy and

sale." This point is stated in appellants' points, but there is no argument appended, nor is there reference to any authority. We are not aware of any principle of law as to location of deeds, &c., nor of any decided case which required the charge to be as therein stated.

XI. "If the land of a married woman was wrongfully possessed prior to 1876, ten years' possession by the trespasser does not ripen into title, and after the death of her husband she has still the right to bring her action for the land." Whatever his honor said on this subject did not affect the case, because he distinctly charged the jury that the statute of limitations could in no way sustain the defendants, resting the case entirely on the location of the sheriff's deed to Leitner, and ruling out all reliance upon the statute, both as a source of title to the defendant and as a bar to the plaintiffs.

XII. "The description of the land in the pleadings or verdict in a suit by Leitner against Tabitha Whitehead, and the location of that land, are not evidence of the location of the land in the sheriff's deed in a suit between the grantees of Leitner and the present plaintiffs, who do not claim through Tabitha Whitehead." After Leitner bought at sheriff's sale all of the heirs of James Birchfield left the premises except Tabitha Whitehead, and Leitner brought action against her for possession, describing the land as containing 600 acres, with boundaries which would cover more than the Pruit tract. He recovered judgment and dispossessed Tabitha. The judge said in reference to this suit, that inasmuch as Leitner claimed under the sheriff's deed, and recovered a judgment against one of the heirs of James Birchfield for the land included in the boundaries described in the complaint, if that covered the land in dispute, that would be evidence that that land was conveyed by the sheriff's deed. It will be observed that in this statement his honor did not rule that the verdict and judgment against Tabitha was conclusive upon the plaintiffs. He still left the main question, to wit, the location, an open question for the jury, because he said to them : "If that case covered the land in dispute, that would be evidence that that land was conveyed by the sheriff's deed," leaving it still to them to find whether or not the sheriff's deed did cover the land in dispute, depending,

of course, upon the evidence of location submitted in the cause then on trial.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MᶜGOWAN concurred.

MR. JUSTICE MᶜIVER, *dissenting.* It seems to me that there should be a new trial on the 16th ground of appeal, being the 12th point presented in the argument of appellants' counsel. One of the most material questions in the case was as to the true location of the sheriff's deed to Leitner, and I think it was a material error to say to the jury that if the judgment recovered in the case of Leitner *v.* Tabitha Whitehead covered the land in dispute, "that would be evidence that that was the land conveyed by the sheriff's deed." On the contrary, it appears to me that what occurred in the suit of *Leitner* v. *Tabitha Whitehead* was *res inter alios acta*, and was not only not conclusive evidence, but was no evidence at all against these plaintiffs, unless it was first shown, as it was not, that they claimed under Tabitha. Inasmuch, therefore, as the jury were instructed that something was evidence upon one of the most material questions in the case, which, according to my view, was no evidence at all against these plaintiffs, I think there was such error in the charge as requires a new trial.

Judgment affirmed.